# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| KERRY MILLER, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| v. ) | District Judge |
| ) | Mag. Judge |
| GINA GETTEL, in her individual ) | |
| capacity, PERRY CURTIS, in his ) | |
| individual capacity, W. MARK ) | |
| FONDREN, in his individual capacity, ) | |
| INTOXIMETERS, INC., JOHN DOE 1, ) | |
| in his individual capacity, JOHN DOE 2, ) | |
| in his individual capacity, and JOHN DOE ) | |
| 3 in his individual capacity, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
Zachary T. Runyan (P83671)
Attorney for Plaintiff
1300 Broadway Street, 5th Floor
Detroit, MI 48226
P: (313) 777-7LAW
jon@jmarkolaw.com

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having  been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

## COMPLAINT AND JURY DEMAND

Plaintiff Kerry Miller, by and through counsel Marko Law, PLLC states as follows for his Complaint against the above-named Defendants:

## INTRODUCTION

1.     This action is brought pursuant to 42 U.S.C. § 1983 and Michigan state law seeking damages for violations of the clearly established constitutional rights of the Plaintiff.  As Plaintiff alleges more fully below, Defendants violated Plaintiff's due process rights by fabricating evidence relating to the calibration, recalibration, accuracy, and/or certification of DataMaster DMT evidential breath alcohol testing instruments ("DataMaster DMTs") used by the State of Michigan to determine the blood alcohol concentration ("BAC") of people suspected of operating a motor vehicle while intoxicated ("OWI") in violation of Mich. Stat. § 257.625; relying on this falsified evidence to initiate criminal prosecutions against Plaintiff; failing to disclose this exculpatory evidence during the pendency of Plaintiff's OWI prosecution; presenting this falsified evidence to Michigan courts and using it to obtain a guilty plea agreement with the Plaintiff; and failing to train, supervise, oversee and/or discipline individuals assigned to coordinate alcohol testing and recalibrate DataMaster DMTs in such a manner that would prevent these egregious constitutional violations.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the claims involve the same case or controversy as the federal claims.

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c)(2) because Defendants do business in this District, Defendants are subject to personal jurisdiction in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## PARTIES

5.     Plaintiff Kerry Miller ("Miller") is an individual citizen of the State of Michigan and resides in Lenawee County.

6.     Defendant Gina Gettel ("Gettel"), at all relevant times, was a resident of the State of Michigan, a Sergeant with the Michigan State Police ("MSP"), and the Manager for the Breath Alcohol Program in the State of Michigan.

7.     Defendant Perry Curtis ("Curtis"), during relevant times, was a resident of the State of Michigan, a Sergeant with MSP, and oversaw the MSP breath testing program and the evaluation of the DataMaster DMT for use in the State of Michigan. Sergeant Curtis retired from MSP in 2018.

8.     Defendant W. Mark Fondren ("Fondren"), during relevant times, was a resident of the State of Michigan and was hired by MSP in 2019 to replace Sergeant Curtis. He was given the title Technical Leader of the MSP Breath Testing Program.  Fondren is a toxicologist and his primary objective at MSP is to bring accreditation to the MSP breath testing program.

9.     Defendant Intoximeters, Inc. ("Intoximeters") is a Missouri Corporation, which at all relevant times conducted business for the State of Michigan and acted under the color of state law.  Defendant Intoximeters entered into a multi-year maintenance contract with the State of Michigan beginning September 1, 2018, which required

Intoximeters to, among other things, conduct 120-day certifications of all DataMaster DMTs, perform general service work, and provide court testimony on the service and maintenance of the instruments.

10.     Defendant John Doe 1 is a resident of the State of Michigan and at relevant times worked for Defendant Intoximeters, Inc.  Specifically, John Doe 1 serviced and maintained DataMaster DMT's in the State of Michigan.

11.     Defendant John Doe 2 is a resident of the State of Michigan and at relevant times worked for Defendant Intoximeters, Inc.  Specifically, John Doe 2 serviced and maintained DataMaster DMT's in the State of Michigan.

12.     Defendant John Doe 3 is a resident of the State of Michigan and at relevant times worked for Defendant Intoximeters, Inc.  Specifically, John Doe 3 serviced and maintained DataMaster DMT's in the State of Michigan.

## FACTUAL ALLEGATIONS

13.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

14.     Under Michigan law, OWI is a criminal offense. *See* Mich. Stat. § 257.625.

15.     Michigan determines whether a person is legally intoxicated by assessing the suspected driver's BAC.

16.     Operating a motor vehicle with a BAC of .08% or higher constitutes an OWI under Michigan law.  There are some instances, however, in which driving with a BAC under .08% may be unlawful as well.

17.     Drivers convicted of OWI are subject to criminal and civil penalties.  These penalties can include, among others, fines, fees, surcharges, suspension of driving privileges, community service, and imprisonment.

18.     The severity of the criminal penalty can vary depending, in part, on the driver's BAC.  And the existence of prior OWI convictions similarly result in increased punishment.

19.     OWI convictions remain on a driver's driving record, which can influence insurance rates and one's criminal record among other things.

20.     Because of the definition of OWI, the result of the BAC test (which is usually conducted shortly after a driver is arrested for suspected OWI) is critically important.

21.     This case challenges the accuracy of the BAC test through DataMaster DMTs that was used to calculate the Plaintiff's BAC from an incident on March 10, 2019.

22.     In 2011, MSP entered into a three-year contract with National Patent Analytic Systems ("NPAS") to purchase approximately three hundred DataMaster DMTs. The contract also required NPAS employees to conduct maintenance checks on the DataMaster DMTs.

23.     The DataMaster DMT is an infrared evidential breath alcohol test instrument. The results of a test from DataMaster DMT, at least since 2011, have been regularly used in Michigan as a main piece of evidence for prosecutors to prove guilt for OWI charges.

24.     In 2013, Intoximeters acquired NPAS.  Intoximeters then took over the maintenance contract between the State of Michigan and NPAS.

25.     While DataMaster DMTs were being evaluated for use in Michigan, the breath testing program was overseen and led by Defendant Curtis.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

Ⓜ MARKO LAW

26.    On September 1, 2018, the State of Michigan entered into a three-year, $1.265 Million, contract with Intoximeters ("Service Contract").  Schedule A of the Service Contract spells out in detail the scope of work required of Intoximeters.  Specifically, the Maintenance Program under the Service Contract had three main components: (1) 120-day certifications of all DataMaster DMT's, (2) general service work that required Intoximeters to perform on-site services necessary to keep the DataMaster DMT's fully operational, and (3) expert court testimony on the service and maintenance of the instruments.

27.    In addition to Intoximeters' obligations to manage and supervise its employees under the Service Contract, Sergeant Gettel was Michigan's designated Program Manager under the Service Contract, responsible for monitoring and coordinating the day-to-day activities of the Service Contract.

28.    Under the Service Contract, Intoximeters could not delegate its obligations without pre-approval from the State of Michigan.  Intoximeters' work was also subject to inspection and testing by the State of Michigan.  Intoximeters was required to provide DataMaster DMT training to MSP staff, and was required to have an accredited ISO 17025 calibration laboratory with accreditation.  Intoximeters was required to have a designated customer service representative available to Michigan personnel, and Intoximeters was required to perform its work Monday through Friday between the hours of 7:00 a.m. and 6:00 p.m. EST.

29.    Intoximeters was required to hire a minimum of three certified DMT service technicians to handle the day-to-day operations of the Service Contract. Michigan (through MSP) had to approve such technicians in writing before they began work.  John Doe 1, John Doe 2 and John Doe 3 ("Doe Defendants") are the technicians who were hired by

Intoximeters and approved by MSP in the fall of 2018, and whose conduct, in part, is the subject of this lawsuit.

30.     In January 2019, MSP desired to bring Michigan's evidentiary breath alcohol testing program into alignment with forensic laboratory standards and work toward national accreditation.

31.     MSP created a new position, Breath Alcohol Technical Leader, within the Forensic Science Division.   MSP hired Defendant Fondren to serve in that role.   The accreditation process was expected to take at least eighteen months.

32.     In April 2019, MSP put additional workflow requirements in place with Intoximeters to ensure compliance with state law and administrative rules and move toward accreditation.   According to MSP's website, it was after these additional controls were put in place that MSP detected problems with the DataMaster DMTs.

33.     These problems included, but are not be limited to, repeated failures by at least the Doe Defendants to maintain and certify DataMaster DMTs.

34.     However, no comprehensive audit of Intoximeters' work was performed. Instead, in August 2019, MSP asked Michigan's Department of Technology, Management and Budget's ("DTMB's") Central Procurement to issue a letter to Intoximeters outlining grounds for breach of contract and requesting a corrective action plan.   MSP did not suspend or otherwise cancel the contract with Intoximeters despite its knowledge of repeated failures in maintaining and certifying the DataMaster DMTs.

35.     On August 9, 2019, Joe Ernst, Senior Relations Analyst of DTMB, sent a letter to Intoximeters stating in part: "Since contract inception, there have been substantial performance issues related to timely certification of Datamaster Instruments and failure of

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

your employees to comply with basic security protocols."  Mr. Ernst expressed MSP's "significant frustration" and maintained that any of the issues identified in his letter alone "is a material breach of the contract that could subject Intoximeters to . . . termination of the contract."

36.     According to the MSP website, examples of alleged improper actions set out in the letter included:

a)      Failure to perform timely 120-day certifications in 60 instances;

b)      Incorrect recording of important elements during instrument checks; and

c)      Sharing instrument passwords with jail staff.

37.     On August 21, 2019, Phillip Simmons of Intoximeters, Inc. provided a Corrective Action Plan ("CAP") to Mr. Ernst.  On August 22, 2019, Mr. Ernst forwarded the CAP to, among others, Defendants Gettel and Fondren, and indicated "it is up to MSP personnel to decide whether to accept or reject their proposed actions."

38.     MSP accepted the CAP and did not terminate the Service Contract with Intoximeters; however, nothing changed with respect to the continued unlawful conduct by the Intoximeters' employees.

39.     Throughout the remaining months of 2019 and January 2020, MSP became aware of repeated instances of unlawful conduct regarding the maintenance and certification of DataMaster DMTs in or by at least seven law enforcement locations: Tecumseh Police Department, Montcalm County, Wayne County, Beverly Hills Police Department, Pittsfield Township Police Department, and Alpena County. This conduct included, but was not limited to, incomplete documentation on alleged work performed on

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

DataMaster DMTs and failures to identify, address, or fix malfunctions with DataMaster DMTs.

40. Both before and after MSP requested a CAP from Intoximeters, Defendants committed serious, unlawful errors, which in some cases according to MSP may have constituted fraud, with respect to the calibration, recalibration, accuracy, maintenance and/or certification of DataMaster DMTs, as well as the training, supervision, and oversight of at least the Doe Defendants, whose main duties were to maintain DataMaster DMTs in Michigan.

41. At relevant times during the life of the Service Contract, Defendants Intoximeters, Gettel, Curtis, and Fondren knew that BAC results taken from DataMaster DMTs in Michigan were used to arrest, charge, prosecute, and criminally convict citizens, whose results exceeded the legal limits under Michigan law.

42. Defendants' unlawful conduct described in this Complaint, including a complete lack of supervision or oversight, caused innocent citizens to be arrested, jailed, prosecuted, criminally convicted, and subjected to fines, surcharges, terms of probation and, in some cases, additional jail time.

43. MSP's website identifies the following law enforcement departments or locations where this unlawful conduct was committed since 2018: Tecumseh Police Department, Montcalm County Sheriff's Department, Wayne County (specifically, the Detroit Detention Center), Alpena County Sheriff's Department, Beverly Hills Police Department, Niles Law Enforcement Center, Pittsfield Township Police Department, and Van Buren County Sheriff's Department.

MARKO LAW

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

44.     In January 2020, after MSP discovered more false paperwork related to a DataMaster DMT at the Alpena County Sheriff's Department, MSP issued a stop work order with Intoximeters.

45.     Major Greg Zarotney of the MSP Office of Professional Development wrote on January 10, 2020, to police and prosecutors statewide that a stop order with Intoximeters was issued on January 7, 2020.

46.     On or about January 13, 2020, MSP issued a statement indicating, among other things:

a)    It was investigating potential fraud committed by employees of Intoximeters;

b)    It was removing all 203 DataMaster DMT testing instruments from service until they were inspected and verified by MSP personnel for proper calibration;

c)    A recent review of Intoximeter records may point to the potential for a widespread issue in the way in which DataMaster DMTs were maintained and certified; and

d)    Since mid-2018, MSP has worked to strengthen Michigan's breath alcohol testing program and hired a technical leader in MSP's Forensic Science Division to "provide oversight."

47.     According to an article from the website, Mlive dated February 13, 2020, entitled "Michigan's unreliable breathalyzers back in service with little explanation," MSP Colonel Joe Gasper accused Intoximeter employees of "deceptive" falsification of "certification records."  And, Col. Gasper said that MSP's audit of the DataMaster DMT records discovered "egregious discrepancies" in data collected from the law enforcement departments referenced above.  The article also notes that the DataMaster DMTs were placed back into service on or about February 13, 2020.

48.     A criminal investigation by MSP into potential fraud committed by employees or contractors of Intoximeters is ongoing.

49.     Plaintiff Kerry Miller is a United States Marine veteran honorably discharged from service in 1993.

50.     In the afternoon of March 10, 2019, Plaintiff Kerry Miller was sitting alone in his vehicle in a McDonald's parking in the City of Tecumseh.

51.     Police officers with the Tecumseh Police Department stopped behind Miller's vehicle, got out, and asked Miller whether he had been drinking alcohol.

52.     Although Miller had consumed two beers much earlier that day, he had not consumed alcohol in the previous two-to-three hours. He otherwise consumed no alcoholic liquor, controlled substance, or other intoxicating substance that day.

53.     Shortly after the officer asked Miller the question about alcohol consumption, the officer said, "I don't smell alcohol." The officer made this statement without the camera on his vest activated.

54.     He subsequently turned his camera on and then said something to the effect of, "I smell alcohol on your breath."

55.     The officer administered a preliminary breathalyzer test while Miller remained seated in his vehicle. The officer then administered a sight test after asking Miller to step out the car.

56.     Miller told the officer he could not see very well as he did not have his glasses on, to which the officer responded, "You failed the test anyway."

57.     Miller was arrested and taken to the Tecumseh Police Department where a breathalyzer test using a DataMaster DMT was conducted. Miller was shown his alleged

BAC result from the DataMaster DMT test, which read .13%.  Miller was taken to the Lenawee County Jail, booked, and placed in a cell for approximately three and one-half hours.

58.     Miller was required to take a preliminary breathalyzer test before leaving the Lenawee County Jail.  He overheard law enforcement personnel comment that the result was a BAC of .02%.

59.     On or about March 25, 2019, Miller was criminally charged with OWI in violation of Mich. Stat. § 257.625(a)(1).

60.     Miller retained a private attorney to represent him.  He incurred and paid $1,000 in attorneys' fees.

61.     Miller ultimately pled guilty on May 14, 2019 to violating Mich. Stat. § 257.625.  Miller was sentenced on June 28, 2019.  His guilty plea included as a criminal punishment the following conditions:

a)     Counseling;

b)     Attending 12-Step Alcoholics Anonymous ("AA") Meetings, which required Miller to attend 90 meetings in 90 days followed by five times a week for 90 days, then 4 times a week, then 3 times a week;

c)     Abstaining from the use of alcohol or drugs;

d)     Paying court and related costs of approximately $1000;

e)     Blowing into a breathalyzer twice a day (which often occurred at 7:00 A.M. in the morning and 7:00 P.M. at night, and began June 29, 2019 and ended October 12, 2019);

f)     Doing 240 hours of community service; and

g)     Receiving eighteen months of probation.

62.     On January 13, 2020, Defendant Gettel sent R. Burke Castleberry, Jr., Lenawee County Prosecuting Attorney, a letter identifying twelve OWI cases affected by the dysfunctional DataMaster DMT "located at the Tecumseh Police Department between February 15, 2019 – June 28, 2019."  One of those cases was Plaintiff Miller's.

63.     Defendant Gettel represented in that letter that the tests for the twelve OWI cases referenced therein "did not pass all required checks during the onsite 120-day inspection that was completed on February 15, 2019."

64.     Plaintiff Miller and the eleven other individuals listed by name on the January 13, 2020 letter were arrested after February 15, 2019.

65.     Defendants knew at the time of these arrests that the DataMaster DMT (instrument no. 300341) had not passed certification.

66.     Defendants knowingly used the results of the BAC tests performed by a dysfunctional DataMaster DMT as a basis for arrest and prosecution of the Plaintiff, and the eleven other individuals listed on the January 13, 2020, letter.

67.     Defendant Gettel asked Mr. Castleberry to let the State of Michigan know its "determination regarding each of the OWI cases previously mentioned."

68.     On January 16, 2020, an Order of Nolle Prosequi was signed by the Honorable Laura J. Schaedler regarding Plaintiff's OWI conviction.   Plaintiff was reimbursed some but not all the costs he paid and believes he is still out of pocket approximately $1,764 in costs for attorneys' fees, counseling costs, and breathalyzer tests he paid for in connection with his arrest and prosecution.

69.     The Court docket reflects that the Order of Nolle Prosequi was filed by prosecutor "due to Datamaster issue."

70.     OWI convictions of others, including but not limited to the eleven others in Lenawee County, were similarly being overturned throughout Michigan for problems related to DataMaster DMTs.

### CAUSES OF ACTION
### COUNT I:

### VIOLATIONS OF THE FOURTH AND FOURTEENTH
### AMENDMENTS TO THE U.S. CONSTITUTION
*(Fabrication of Evidence Against All Defendants)*

71.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

72.     In performing the activities outlined above, Defendants operated under the color of state law.

73.     The intentional, or with reckless disregard, use of falsified evidence to initiate a criminal prosecution violates a criminal defendant's constitutional right against arrest without probable cause, and one's right to due process and a fair trial, undermining public confidence in the integrity and impartiality of the criminal justice system and diminishing the rule of law.

74.     Defendants knowingly falsified DataMaster DMTs' certifications, which Michigan courts required to be admitted into evidence before a prosecutor may use a BAC result to seek to convict an OWI suspect.

75.     By knowingly failing to maintain operable and reliable DataMaster DMTs, Defendants maliciously, intentionally, and/or with reckless disregard, caused the State to rely upon false evidence to charge, arrest, and/or convict criminal defendants, like Plaintiff, depriving them of their liberties.

MARKO LAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

Ⓜ MARKO LAW

76.     In so doing, Defendants acted with deliberate indifference to Plaintiff's clearly established constitutional rights against arrest without probable cause and right to a fair trial and due process of law under the Fourth and Fourteenth Amendment of the U.S. Constitution in violation of 42 U.S.C. § 1983.

77.     At all relevant times, Defendant Intoximeters maintained a policy, practice or custom of knowingly failing to maintain proper devices, ensure their certifications, or otherwise comply with the Service Contract, including long after the State notified it of its deficiencies, and violating the constitutional rights of Plaintiff.

78.     As a result of such policy, practice or custom, Defendant Intoximeters has caused a deprivation of the constitutional rights of Plaintiff.

79.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to all damages and relief available at law and equity.

## COUNT II:

## VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
### *(Withholding and Suppression of Evidence Against All Defendants)*

80.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

81.     In performing the activities outlined above, Defendants operated under the color of state law.

82.     Defendants knew, or recklessly disregarded the fact that, the State was relying on its faulty DataMaster DMTs to arrest, charge, and convict criminal defendants with false evidence in deprivation of their constitutional liberties.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

83.     Nonetheless, Defendants intentionally failed to disclose this information relating to their fabrication of evidence.

84.     Defendants failed to promptly disclose the fabrication of material and exculpatory evidence in deliberate disregard for the constitutional rights of the Plaintiff under the due process of law under the Fourteenth Amendment of the U.S. Constitution in violation of 42 U.S.C. § 1983.

85.     At all relevant times, Defendant Intoximeters maintained a policy, practice or custom of knowingly failing to maintain proper devices, ensure their certifications, or otherwise comply with the Service Contract, including long after the State notified it of its deficiencies, and violating the constitutional rights of Plaintiff.

86.     As a result of such policy, practice or custom, Defendant Intoximeters has caused a deprivation of the constitutional rights of Plaintiff.

87.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to all damages and relief available at law and equity.

## COUNT III:

## VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
### *(Failure to Intervene Against All Defendants)*

88.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

89.     During the constitutional violations discussed above, one or more of Defendants observed or had reason to know that such violations were occurring and did not intervene to try to stop such violations despite having a reasonable opportunity to do so and the means of preventing such unlawful conduct.

90.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to all damages and relief available at law and equity.

## COUNT IV:

### VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
*(Failure to Train and Supervise Against Defendants Gettel, Curtis, Fondren, and Intoximeters)*

91.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

92.     The illegal conduct described above, including the failure to perform timely 120-day certifications; the incorrect recording of important elements during instrument checks; and sharing instrument passwords with jail staff, qualify as clear and persistent violations of criminal suspects' constitutional rights, which Defendants Gettel, Curtis, Fondren, and Intoximeters knew or should have known was a direct consequence of these actions.

93.     Nonetheless, Defendants Gettel, Curtis, Fondren, and Intoximeters were deliberately indifferent about such conduct, which caused the deprivation of Plaintiff's constitutional rights.

94.     Defendants Gettel, Curtis, Fondren, and Intoximeters have encouraged, tolerated, ratified, and have been deliberately indifferent to the above-referenced patterns and practices, as well as the clear need for more or different training, supervision, investigation, or discipline.

95.     As a result of Defendants Gettel's, Curtis' Fondren's and Intoximeters' unlawful conduct, Plaintiff is entitled to all damages and relief available at law and equity.

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

## COUNT V:

## NEGLIGENCE
### *(Against all Defendants)*

96.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

97.     The acts and conduct of Defendants alleged above when considered under the laws of the State of Michigan, constitute negligence.

98.     Defendants owed a duty of care to the Plaintiff, who was prosecuted using evidence derived from the negligently maintained DataMaster DMTs.

99.     Defendants breached their duty to Plaintiff's safety, protection, and health by:

a)      Engaging in "deceptive" falsification of "certification records";

b)      Causing "egregious discrepancies" in certifying and maintaining DataMaster DMTs' data;

c)      Failing to make timely accuracy checks of the DataMaster DMTs;

d)      Deliberately disregarding the conduct described herein;

e)      Continuing to rely upon the DataMaster DMTs despite knowledge of its inaccuracies and unreliable readings; and

f)      Failing to adequately train, monitor or oversee the personnel assigned to perform the day-to-day maintenance of the DataMaster DMTs.

100.    It was foreseeable that Defendants' actions and omissions would result in injury to Plaintiff. It was foreseeable that the BAC results of DataMaster DMTs would be used by prosecutors throughout the State of Michigan to charge, prosecute, and convict individuals suspected of OWI.  It was foreseeable that, if DataMaster DMTs were not properly maintained and calibrated or in some instances set to intentionally dysfunction,

that inaccurate BAC results would be used and relied on to criminally charge and convict innocent people.

101. Defendants' negligence was the factual cause of Plaintiff's injuries.

102. Defendants' actions were the ones most immediate, efficient, and direct cause of Plaintiff's injuries.

103. The conduct of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether injury would result to those charged and convicted using BAC results from the DataMaster DMTs.

104. Through the above conduct, Defendants exhibited deliberate indifference amounting to gross negligence.

105. Defendants are not entitled to the immunity.

106. As the direct and proximate result of Defendants' gross negligence and/or negligence, Plaintiff is entitled to all damages and relief available at law and equity.

## COUNT VI:

## FRAUD & MISREPRESENTATION

107. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

108. Defendants negligently, constructively, recklessly, and/or intentionally made representations as explained above.

109. Said representations were false.

110. Defendants knew and/or should have known that said representations were false.

111.   Plaintiff sustained and continues to sustain injuries and damages as a result of Defendants' false representations.

112.   As a result of Defendants' unlawful conduct, Plaintiff is entitled to all damages and relief available at law and equity.

## **RELIEF REQUESTED**

113.   WHEREFORE, Plaintiff prays for entry of judgment finding and awarding as follows:

a)   For an Order adjudging the practices and conduct of Defendants complained of herein to be in violation of the rights guaranteed to Plaintiff under the U.S. Constitution, Federal law, and State law;

b)   Judgment that Defendants were negligent;

c)   For an award to Plaintiff against Defendants, jointly and severally, all relief available under 42 U.S.C. § 1983 and under Michigan law, to be determined at trial, with interest on such amounts;

d)   For an award to Plaintiff of actual damages, including those arising from loss of past and future income and benefits, humiliation, mental anguish, loss of reputation, emotional distress and other harm, in an amount in excess of $75,000 against Defendants;

e)   For an award of punitive damages in an amount to be determined at trial;

f)   For an award to Plaintiff of his attorneys' fees, disbursements, and costs in this action, pursuant to 42 U.S.C. § 1988, and as otherwise available at law or in equity;

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P. (313) 777-7LAW
F. (313) 771-5785

MARKO LAW

g)     For an award of prejudgment interest; and

h)     For such other and further relief as the Court deems just and equitable.

Dated: January 26, 2021               Respectfully Submitted:

                                   *s/ Zachary T. Runyan*
**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
Zachary T. Runyan (P83671)
1300 Broadway Street, 5th Floor Detroit,
MI 48226
P: (313) 777-7LAW
zach@jmarkolaw.com

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| KERRY MILLER, | ) |
| | ) |
| Plaintiff, | )    Case No. |
| v. | )    District Judge |
| | )    Mag. Judge |
| GINA GETTEL, in her individual capacity, | ) |
| PERRY CURTIS, in his individual capacity, | ) |
| W. MARK FONDREN, in his individual | ) |
| capacity, INTOXIMETERS, INC., JOHN | ) |
| DOE 1, in his individual capacity, JOHN | ) |
| DOE 2, in his individual capacity, and JOHN | ) |
| DOE 3 in his individual capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
Zachary T. Runyan (P83671)
Attorney for Plaintiff
1300 Broadway Street, 5th Floor
Detroit, MI 48226
P: (313) 777-7LAW
jon@jmarkolaw.com

---

### <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury in the above-captioned matter.

Dated: January 26, 2021

Respectfully Submitted:

*s/ Zachary T. Runyan*
**MARKO LAW, PLLC**
Jonathan R. Marko (P72450)
Zachary T. Runyan (P83671)
1300 Broadway Street, 5th Floor Detroit, MI
48226
P: (313) 777-7LAW
zach@jmarkolaw.com

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

JM MARKO LAW