UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRY MILLER,

Plaintiff,

v.

GINA GETTEL, ET AL.,

Defendants.

_____/

Case No. 21-cv-10175

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS FONDREN AND GETTEL'S MOTION TO DISMISS IN LIEU OF AN ANSWER (ECF No. 31) AND GRANTING DEFENDANT INTOXIMETER'S MOTION TO DISMISS (ECF NO. 33)

### I.   INTRODUCTION

Plaintiff Kerry Miller initiated this civil rights action on January 26, 2021 against Defendants Sergeant Gina Gettel, former Sergeant Perry Curtis, W. Mark Fondren, Intoximeters, Inc. and three Doe Intoximeter employees.  ECF No. 1.  Specifically, Plaintiff alleges Defendants violated his due process rights by fabricating breathalyzer evidence against him, using said evidence to initiate criminal proceedings against him and obtain a guilty plea, and failing to train or supervise.  *Id.* at PageID.2.

1

Presently before the Court are Fondren and Gettel's Motion to Dismiss in Lieu of an Answer (ECF No. 31) and Intoxmieters' Motion to Dismiss (ECF No. 33). The matters are fully briefed, and a hearing was held on December 13, 2021. For the following reasons, the Court will **GRANT IN PART AND DENY IN PART** Gettel and Fondren's motion and **GRANT** Intoximeters motion.

## II.   BACKGROUND

### A. Factual Background

#### 1. **Michigan State Police's History with DataMaster DMT**

The DataMaster DMT is an infrared evidential breath alcohol test instrument. ECF No. 1, PageID.6. Since at least 2011, Michigan prosecutors have used DataMaster DMT results as the main piece of evidence to prove guilt for operating a motor vehicle while intoxicated ("OWI") charges. *Id*.

Defendant Sergeant Curtis oversaw the Michigan State Police ("MSP") Breath Alcohol Program and evaluated the DataMaster DMT for use in the State of Michigan prior to his retirement from the MSP in 2018. *Id.* at PageID.3.

On September 1, 2018, the State of Michigan entered a three-year contract with Defendant Intoximeters that included regular maintenance and certification of the DataMaster DMTs ("Service Contract"). *Id.* at PageID.6. Defendant Sergeant Gettel, Michigan's Manager for the Breath Alcohol Program, was responsible for

2

monitoring and coordinating the day-to-day activities of the Service Contract. *Id*. Subject to Michigan's (through the MSP's) approval, Intoximeters was required to hire a minimum of three certified DMT service technicians to handle the day-to-day operations of the Service Contract (the Doe Defendants). *Id*. Intoximeters was also required to provide DataMaster DMT training to MSP staff and designate a customer service representative. *Id*.

In January 2019, the MSP began efforts to "bring Michigan's evidentiary breath alcohol testing program into alignment with forensic laboratory standards and work toward national accreditation." *Id*. at PageID.7. The MSP hired Defendant Fondren to fill the newly created Breath Alcohol Technical leader role within the Forensic Science Division. *Id*. In April 2019, the MSP implemented additional workflow requirements for Intoximeters to ensure compliance with state law and administrative rules and move toward accreditation. *Id*. According to the MSP's website, these additional controls enabled the MSP to detect problems with the DataMaster DMTs, such as the fact they were not being maintained or certified by the Doe Defendants. *Id*. At this time, the MSP did not commission an audit of Intoximeter's work. *Id*.

Instead, at the MSP's request, a Senior Relations Analyst from Michigan's Department of Technology, Management and Budget's Central Procurement sent

3

Intoximeters a letter on August 9, 2019 stating, *inter alia*: "Since contract inception, there have been substantial performance issues related to timely certification of Datamaster [*sic*] Instruments and failure of your employees to comply with basic security protocols." *Id.* at PageID.7-8. The letter expressed the MSP's "significant frustration" and warned any of the issues identified in the letter constituted a material breach of contract that could result in termination. *Id.* at PageID.8. These issues included sixty instances of failing to perform certifications, incorrectly recording important elements during instrument checks, and sharing instrument passwords with jail staff. *Id.*

Intoximeters responded with a corrective action plan ("CAP") on August 21, 2019. Gettel and Fondren, among others, decided to accept the CAP and not terminate the contract. *Id.* However, throughout the rest of 2019 and January 2020, the "MSP became aware of repeated instances of unlawful conduct regarding the maintenance and certification of DataMaster DMTs in or by at least seven law enforcement locations." *Id.* This conduct included incomplete documentation on alleged work performed on DataMaster DMTs and failures to identify, address, or fix malfunctions with DataMaster DMTs. *Id.*

After the MSP discovered more false paperwork related to a DataMaster DMT at the Alpena County Sheriff's Department, the MSP issued a stop work order with

4

Intoximeters on January 7, 2020.  *Id.* at PageID.10.  The MSP issued a statement indicating, *inter alia*, it was investigating potential fraud committed by Intoximeters employees.  *Id*.  This investigation was ongoing when Miller filed his Complaint. *Id.* at PageID.11.  By the time Defendants Fondren and Gettel filed their Motion to Dismiss two of the Doe Defendants had been criminally charged.  ECF No. 31, PageID.190.  One pleaded guilty and the other's case was pending at the time of filing.  *Id*.

## 2.  **Miller's Arrest, Prosecution, and Plea**

In the afternoon on March 10, 2019, Plaintiff Miller was sitting in his vehicle in a McDonald's parking lot in Tecumseh, Michigan when a police officer approached and asked if he had been drinking alcohol.  ECF No. 1, PageID.11. Miller stated he had consumed two beers earlier that day but had not drunk any alcohol in the preceding two-to-three hours.  *Id*.  Plaintiff alleges the officer said he did not smell alcohol prior to turning on his body-worn camera and then stated he smelled alcohol on Miller's breath after the camera activated.  *Id*.  The officer administered a preliminary breathalyzer test while Miller was still seated in his vehicle and administered a vision test after Miller exited his car.  Plaintiff explained he could not see well because he did not have his glasses and the officer responded, "You failed the test anyway."  *Id*.

5

Miller was arrested and taken to the Tecumseh Police Department where he was given a DataMaster DMT breathalyzer test, the result of which was 0.13% Blood Alcohol Concentration ("BAC"). *Id.* at PageID.12. Plaintiff was required to take another test before leaving the county jail approximately three and a half hours later. *Id*. He overheard law enforcement personnel comment that test resulted in a 0.2% BAC. *Id*. On March 25, 2019, Miller was criminally charged with OWI in violation of Mich. Comp. Laws § 257.625(a)(1). *Id*. He retained counsel and paid $1,000 in attorney fees. *Id*. Plaintiff ultimately pleaded guilty on May 14, 2019. *Id*. Pursuant to his plea agreement, Miller had to attend counseling, attend Alcoholics Anonymous meetings, abstain from alcohol or drugs, pay fines and costs of approximately $1000, take twice daily breathalyzer exams for about four months, complete 240 hours of community service, and serve eighteen months of probation. *Id*.

### 3. **Discovery of the Defect with Miller's DataMaster DMT Exam**

On January 13, 2020, Defendant Gettel sent the Lenawee County Prosecuting Attorney a letter identifying twelve OWI cases affected by the dysfunctional DataMaster DMT "located at the Tecumseh Police Department between February 15, 2019 – June 28, 2019." *Id.* at PageID.13. Gettel explained the tests for those

6

twelve OWI cases "did not pass all required checks during the onsite 120-day inspection that was completed on February 15, 2019." *Id*.

Miller's case was identified in the letter. *Id*. He and the eleven other affected individuals were arrested after that failed inspection on February 15, 2019. *Id*. Therefore, Plaintiff alleges "Defendants knew at the time of these arrests that the DataMaster DMT (instrument no. 300341) had not passed certification." *Id*. Despite this, "Defendants knowingly used the results of the BAC tests performed by a dysfunctional DataMaster DMT as a basis for arrest and prosecution of the Plaintiff, and the eleven other individuals listed on the January 13, 2020, letter." *Id*.

On January 16, 2020, the Honorable Laura J. Schaedler signed an Order of *Nolle Prosequi* regarding Plaintiff's OWI conviction "due to Datamaster [*sic*] issue." *Id*. Plaintiff was reimbursed some but not all the costs he paid and believes he is still out of pocket approximately $1,764 in costs for attorneys' fees, counseling costs, and breathalyzer tests he paid for in connection with his arrest and prosecution. *Id*.

### B. Procedural Background

Plaintiff alleges Defendants violated his

due process rights by fabricating evidence relating to the calibration, recalibration, accuracy, and/or certification of DataMaster DMT evidential breath alcohol testing instruments ("DataMaster DMTs") used by the State of Michigan to determine the blood alcohol

7

concentration ("BAC") of people suspected of operating a motor vehicle while intoxicated ("OWI") in violation of Mich. Stat. § 257.625; relying on this falsified evidence to initiate criminal prosecutions against Plaintiff; failing to disclose this exculpatory evidence during the pendency of Plaintiff's OWI prosecution; presenting this falsified evidence to Michigan courts and using it to obtain a guilty plea agreement with the Plaintiff; and failing to train, supervise, oversee and/or discipline individuals assigned to coordinate alcohol testing and recalibrate DataMaster DMTs in such a manner that would prevent these egregious constitutional violations.

ECF No. 1, PageID.2.

He brings claims against all Defendants for fabricating evidence in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution (Count I), withholding and suppressing evidence of the faulty DataMaster DMTs in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment (Count II), failing to intervene to stop the aforementioned violations in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment (Count III), negligence (Count V), and fraud and misrepresentation (Count VI). *Id.* at PageID.14-20. He also brings a claim against Defendants Gettel, Curtis, Fondren, and Intoximeters for failure to train and supervise in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment (Count IV). *Id.* at PageID.17.

8

1. **Defendant's Fondren and Gettel's Motion to Dismiss**

Defendants Fondren and Gettel (collectively "the MSP Defendants") filed the instant Motion to Dismiss in Lieu of an Answer on April 9, 2021.  ECF No. 31.  They argue they are entitled to qualified immunity because the Complaint does not allege that they violated any of Miller's clearly established constitutional rights.  *Id.* at PageID.196.  Specifically, the MSP Defendants contend they "had no specific awareness of the particulars of Miller's case."  *Id.*  They assert, "Miller's complaint fails to set forth any non-conclusory facts that show any personal involvement by Defendants Gettel or Fondren in either his criminal case or [with] the specific DataMaster DMT used for his underlying prosecution in Lenawee County."  *Id.* at PageID.198.  Thus, they could not have owed him a duty of care or been the proximate cause of his alleged harm; nor did they have notice of, or opportunity, to correct said harm.  *Id.*

Additionally, the MSP Defendants aver "the intrusive conduct alleged in the complaint must fall under the Fourth Amendment and not an unrecognized concept of Fourteenth Amendment violation" and there cannot be a Fourth Amendment violation because they took no intentional actions to unreasonably seize Miller.  *Id.* at PageID.199.  Regardless, the MSP Defendants assert Plaintiff's allegations do not constitute a substantive due process violation because they were not "conscience-

9

shocking" and swift corrective action was taken as soon as *other's* misconduct was detected. *Id.* at PageID.201. Similarly, the MSP Defendants argue Miller cannot claim he was deprived of procedural due process because "Michigan courts already have adequate procedural safeguards in place." *Id.* Nor can Plaintiff assert a state-created danger claim, they aver, because the MSP Defendants lacked knowledge of any danger to Miller, and they did not increase any danger to him by failing to stop the misconduct of others. *Id.* at PageID.203.

Plaintiff counters that (1) he has adequately alleged Gettel and Fondren's personal involvement, ECF No. 35, PageID.381; (2) the MSP Defendants are not otherwise entitled to qualified immunity on his fabrication of evidence, suppression of evidence, failure to intervene, and failure to train and supervise claims under the Fourteenth Amendment, *id.* at PageID.382-92; (3) he has plausibly pleaded a gross negligence claim against the MSP Defendants, *id.* at PageID.395-96; and he has sufficiently alleged a claim for fraud and misrepresentation for which the MSP Defendants were not entitled to governmental immunity, *id.* at PageID.397-402.

Fondren and Gettel's Reply essentially repeats their arguments that Plaintiff has not plausibly pleaded his fabrication of evidence, suppression of evidence, and failure to intervene claims because they were not personally involved with Miller's arrest or prosecution or the evidence used in either. ECF No. 41, PageID.538-39.

10

Additionally, they contend the failure to supervise and train claim is deficient because (1) Plaintiff simply describes each Defendant's job without alleging facts showing that either implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of a subordinate and (2) the Tecumseh Police Department is not within the chain of command of the MSP.  *Id.* at PageID.5410.  Moreover, the MSP Defendants argue Miller's state law claims are blocked by governmental immunity because (1) the failure to act does not constitute gross negligence or an intentional tort; (2) Gettel and Fondren did not commit fraud or make a false representation, and the failure to disclose does not constitute fraud in these circumstances; and (3) the intentional tort claim must fail because the MSP and local authorities took action to correct the harm Miller suffered, and Gettel and Fondren were not performing ministerial acts.  *Id.* at PageID.540-42.

## 2.  **Defendant Intoximeter's Motion to Dismiss**

Defendant Intoximeters filed the instant Motion to Dismiss on April 12, 2021.[1]  ECF No. 33.  It argues it is not subject to liability under 42 U.S.C. § 1983

---

[1] Defendant Curtis also filed a Motion to Dismiss on April 12, 2021.  ECF No. 32.  But on May 4, 2021, pursuant to an agreement between Miller and Curtis, the Court entered a Stipulated Order to Dismiss Defendant Curtis without Prejudice. ECF No. 38.

11

because Intoximeters is not a state actor.  Specifically, Intoximeters contends Miller has not identified under which test he alleges that Intoximeters acted under color of law, but Intoximeters cannot be considered a state actor under any recognized test. ECF No. 33, PageID.351-57.  Additionally, Intoximeters avers it is not subject to negligence liability because Miller does not establish that Intoximeters owed Miller a duty of care.  *Id.* at PageID.358-60.  Finally, Intoximeters contends Miller has not adequately pleaded negligent or intentional fraud.  In particular, Intoximeters argues Miller does not assert it made a material representation, that any such representation was made with the intent that Plaintiff would act on it, or that Plaintiff reasonably or justifiably relied on any such misrepresentations.  *Id.* at PageID.361-62.  Similarly, Intoximeters avers Plaintiff cannot establish third-party fraud because "[t]he Complaint is devoid of facts showing that Intoximeters made any representation to a third party, let alone with the intention that the third party would relay the misrepresentation to Plaintiff to deceive him."  *Id.* at PageID.363.

Miller filed a timely response.  *See* ECF No. 36.  First, he counters that he has plausibly pleaded that Intoximeters acted under color of law under the nexus and

12

public function tests.  This is evidenced, Plaintiff contends, by the "significant management and control" the MSP exerted over Intoximeters, *id.* at PageID.500-01, and because Intoximeters was involved in procuring evidence through forensic testing, a function traditionally left to the state, *id.* at PageID.503.  Second, Miller disputes that he has not plausibly pleaded a negligence claim.  Specifically, he argues the Michigan Supreme Court has recognized contracts do not extinguish duties that would otherwise exist, such as the common law duty of care.  *Id.* at PageID.507-08.  Finally, Plaintiff avers he has sufficiently alleged a claim for fraud and misrepresentation because he alleged Defendants engaged in falsification of certification records which were used to wrongfully convict citizens such as Plaintiff.  *Id.* at PageID.513.  He further argues that Intoximeters had a duty to disclose that the subject machine failed its February 15, 2019 inspection.  *Id*.

Intoximeter's Reply argues that (1) it is not a state actor by distinguishing from Plaintiff's cited cases, ECF No. 42, PageID.550-54; (2) Count IV alleges Intoximeters made false representations, not fraudulent omissions, and Plaintiff does not allege that he justifiably relied on any fraudulent representations or omissions, *id.* at PageID.555; and (3) Plaintiff has not alleged a relationship between himself and Intoximeters giving rise to a duty of care necessary to sustain a negligence claim, *id.* at 556.

13

### III.   LAW & ANALYSIS

## A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a district court to assess whether the plaintiff has stated a claim upon which relief may be granted.   To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).   *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).   Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."   *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all his factual allegations as true.   *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).   While courts are required to accept the factual allegations in a complaint as true, *Twombly,*

14

550 U.S. at 556, the presumption of truth does not apply to a claimant's legal conclusions. *See Iqbal,* 556 U.S. at 678.  Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotation marks omitted).

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss; however, "matters of public record, orders, items appearing in the record of the case, and *exhibits attached to the complaint*, also may be taken into account. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001) (emphasis in original). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Id.*; *see also Commercial Money Ctr, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

15

### B. Discussion

#### 1. The MSP Defendants are Not Entitled to Qualified Immunity at This Time.

As discussed *supra*, the MSP Defendants spend much of their Motion to Dismiss arguing they are entitled to qualified immunity on Miller's Fourth and Fourteenth Amendment claims. They assert qualified immunity is a threshold matter that "is not merely a defense to liability but also a shield for public officials against the burdens of litigation and trial." ECF No. 31, PageID.195. Thus, they argue that it should apply at the motion to dismiss stage.

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court uses a two-prong analysis to determine whether an official is entitled to qualified immunity. Courts should "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In one prong, the "court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Id.* at 236.

16

The burden is on the plaintiff to present "facts that demonstrate what each Defendant did violates the asserted constitutional right." *Ondo v. City of Cleveland*, 795 F.3d. 597, 610 (6th Cir. 2015).  But the court must view the facts in the light most favorable to the plaintiff when assessing his claims. *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018).

In the other prong, "the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 236.  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks and alterations omitted).  There need not be a case directly on point, but the court must determine "whether existing precedent placed the conclusion that [the defendant] acted unreasonably in these circumstances beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 14 (2015) (internal quotation marks omitted).  Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Additionally, "[a]s [the Sixth Circuit has] repeatedly cautioned, it is generally inappropriate for a district court to grant a 12(b)(6) motion on the basis of qualified

17

immunity." *Hart v. Hillsdale Cty., Michigan*, 973 F.3d 627, 635 (6th Cir. 2020) (internal quotation marks omitted).  "Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* (internal quotation marks omitted); *see also Mills v. Barnard*, 869 F.3d 473, 487 (6th Cir. 2017).  This is because the fact-intensive nature of the applicable tests makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*." *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring) (emphasis in original).

> ### i.   Plaintiff Has Plausibly Pleaded the MSP Defendant's Involvement in His Alleged Constitutional Violations.

As a threshold matter, the MSP Defendants argue that "apart from conclusory legal assertions," the Complaint does not allege they acted to violate any of Miller's clearly established constitutional rights.  ECF No. 31, PageID.196.  In particular, they contend they did not (1) participate in the seizure or prosecution of Miller; (2) maintain, calibrate, or service the instrument in question; (3) create any of the maintenance records; or (4) directly review any of the people who performed these tasks.  *Id.* at PageID.197.  Instead, "[t]hey were, in essence, administrators of an MSP contract or program for providing a particular type of forensic evidence in certain types of prosecutions." *Id*. at PageID.196.

18

Plaintiff counters that the MSP Defendants knew the subject DataMaster DMT was defective—producing inaccurate and unreliable test results—and their failure to act on this knowledge resulted in violations of his constitutional rights. ECF No. 35, PageID.382. Specifically, Plaintiff asserts the MSP Defendants were tasked with overseeing the maintenance of the DataMaster DMT machines, *id.* at PageID.385 (citing ECF No. 1, PageID.6), the results from DataMaster DMT tests are the main piece of evidence in OWI prosecutions, ECF No. 1, PageID.5, and they knew the Tecumseh Police and Lenawee County Prosecutors would continue relying on the machines for convictions unless informed the machines were inaccurate, ECF No. 35, PageID.385 (citing ECF No. 1, PageID.13). Thus, Plaintiff avers, "once Defendants Gettel and Fondren became aware that the subject machine was not accurate, a failure to inform Tecumseh Police or Lenawee County that the machine was no longer reliable or accurate, is tantamount to providing fabricated evidence." *Id*.

It is true that personal liability under 42 U.S.C. § 1983 "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir.1991). However, the Court finds Plaintiff has pleaded at least some

19

errors by the MSP Defendants that contributed to his alleged constitutional violations.

The parties do not dispute that Plaintiff's arrest on March 10, 2019 occurred after the subject DataMaster DMT failed an inspection on February 15, 2019, ECF No. 1, PageID.13, and shortly before the MSP detected widespread problems with the DataMaster DMTs. *Id.* at Page.ID.8-11. Nor do they dispute that the MSP first took remedial action (sending a letter to Intoximeters) on August 9, 2019 and continued to use the defective machines until January 2020, *id.* at PageID.8-9, well after Miller pleaded guilty to OWI on May 14, 2019, *id.* at PageID.12. Miller has also alleged Gettel and Fondren oversaw the Breath Alcohol Program, *id.* at PageID.6, PageID.7, and had some authority over whether the DataMaster DMTs would keep being used, *id.* at PageID.8. Viewing the facts in the light most favorable to the Plaintiff, the Court infers the MSP Defendants decision to continue using the DataMaster DMTs contributed to Miller's constitutional violations.

Moreover, the Court notes the present factual dispute is why the Sixth Circuit cautions against granting qualified immunity at the motion to dismiss stage. Discovery is needed to determine the extent, if any, of Gettel and Fondren's involvement. Given Miller has sufficiently alleged constitutional violations under

20

the Fourteenth Amendment (*see infra*), the Court finds it is "inappropriate" to grant

qualified immunity to the MSP Defendants at this time.  *Hart*, 973 F.3d at 635.

> ### ii.   Miller Has Sufficiently Alleged Three of His Four Fourteenth Amendment Violation.

As discussed *supra*, the MSP Defendants argue Plaintiff has not adequately

alleged any of his Fourteenth Amendment claims.  For the following reasons, the

Court disagrees and holds he has plausibly pleaded the fabrication of evidence,

suppression of evidence, and failure-to-intervene claims.

First, the Court finds Miller has sufficiently alleged a fabrication of evidence

claim under the Fourteenth Amendment.  The Sixth Circuit has held "the Due

Process Clause of the Fourteenth Amendment is also violated when evidence is

knowingly fabricated[,] and a reasonable likelihood exists that the false evidence

would have affected the decision of the jury."  *Jackson v. City of Cleveland*, 925

F.3d 793, 815 (6th Cir. 2019) (citation and internal quotation marks omitted), *cert.*

*denied sub nom. City of Cleveland, Ohio v. Jackson*, 140 S. Ct. 855 (2020).

The Court determines Miller has adequately pleaded the MSP Defendants

"knowingly fabricated" the evidence against him for this stage of the proceedings.

The Complaint alleges that, prior to Miller's arrest in March, the subject DataMaster

DMT did not pass an inspection conducted on February 15, 2019.  ECF No. 1,

PageID.13.  Moreover, shortly after Miller was charged with OWI on March 25,

21

2019, *id.* at PageID.12, in April 2019, the MSP discovered the Doe Defendants repeatedly failed to maintain and certify the DataMaster DMTs, *id.* at PageID.7. Despite the discovery, the MSP did not commission a comprehensive audit of Intoximeters work, *id.* at PageID.7, and Miller's prosecution continued until he eventually pleaded guilty on May 14, 2019, *id.* at PageID.12. Plaintiff further alleges Defendants Gettel and Fondren were tasked with overseeing that the DataMaster DMT machines were maintained. *See id.* at PageID.6, PageID.7. Additionally, they "knew BAC results taken from DataMaster DMTs in Michigan were used to arrest, charge, prosecute, and criminally convict citizens[] whose results exceeded the legal limits under Michigan Law." *Id.* at PageID.9.

Viewing the facts in the light most favorable to the Plaintiff, the Court finds Miller has plausibly alleged the MSP Defendants knowingly or recklessly allowed local authorities to continue charging, prosecuting, and convicting Michiganders of OWI using faulty instruments that could have produced false evidence—and did in Miller's case.

There is no question Plaintiff has sufficiently pleaded "the false evidence could have affected" the outcome of the proceedings. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017). Plaintiff alleges the sole basis for charging him was the erroneous result of the DataMaster DMT test, as evidenced by the order of *nolle*

22

*prosequi* "due to Datamaster [*sic*] issue."   ECF No. 1, PageID.13, and the MSP

Defendants did not dispute this assertion.

Accordingly, the Court concludes Plaintiff has sufficiently alleged a

fabrication of evidence claim under the Fourteenth Amendment.

Second the Court finds Plaintiff has also plausibly pleaded a suppression of

evidence claim.  In *Brady v. Maryland*, the United States Supreme Court held "the

suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution."   373 U.S. 83, 87

(1963).  "Prosecutors are required to turn over to the defense evidence that was 'so

clearly supportive of a claim of innocence that it gives the prosecution notice of a

duty to produce' even without a defense request."  *Moldowan v. City of Warren*, 578

F.3d 351, 384 (6th Cir. 2009) (quoting *U.S. v. Agurs*, 427 U.S. 97, 107).

Furthermore, the Sixth Circuit has recognized "police can commit a constitutional

deprivation analogous to that recognized in Brady by withholding or suppressing

exculpatory material."  *Jackson*, 925 F.3d at 814 (quoting *Moldowan*, 578 F.at 379).

To establish a withholding of evidence claim, the plaintiff must show, "[1] the

evidence at issue must be favorable to the accused, either because it is exculpatory,

or because it is impeaching; [2] that evidence must have been suppressed by the

23

State, either willfully or inadvertently; and [3] prejudice must have ensued." *Id.* (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

Miller argues he has satisfied the three elements because (1) the evidence that the subject DataMaster DMT machine failed its inspection on February 15, 2019 was favorable to Plaintiff as evidenced by the Lenawee County filing the order of *nolle prosequi* after the MSP revealed the failure; (2) Defendant's Gettel and Fondren knew the subject machine failed its inspection prior to Miller's arrest; and (3) Plaintiff pleaded guilty due to his belief the DataMaster results were "insurmountable."  ECF No. 35, PageID.389.

Defendants counter by arguing again that they had nothing to do with, or any awareness of, Miller's criminal case.  ECF No, 41, PageID.538-39.  However, the Court finds this unpersuasive.  In this case, the exculpatory evidence—that the subject DataMaster DMT had failed its inspection prior to Plaintiff's arrest—was in the MSP's possession, not the Tecumseh Police or the Lenawee County Prosecutor. *See* ECF No. 1, PageID.13 The MSP Defendants were aware of general deficiencies with the DataMaster DMTs at least as early as April 2019, *id.* at PageID.7, but did not share that knowledge with local authorities, allowing Miller's prosecution to continue uninterrupted until he eventually entered a guilty plea and was sentenced,

24

*id.* at PageID.12.  Based on these facts, the Court concludes Plaintiff has plausibly pleaded a suppression of evidence claim under the Fourteenth Amendment.

Third, the Court finds Plaintiff has sufficiently alleged a failure to intervene claim.   Although failure to intervene claims generally involve allegations of excessive force, the Sixth Circuit has extended the theory beyond that context.  *Virgil v. City of Newport*, No. CV 16-224-DLB-CJS, 2018 WL 344986, at *12 (E.D. Ky. Jan. 9, 2018) (citing *Smith v. Ross*, 482 F.2d 33, 36-37 (6th Cir. 1973); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982); *Johnson v. Vill. of Ottawa Hills*, 5 Fed.Appx. 390, 395 (6th Cir. 2001)), *aff'd,* 745 F. App'x 618 (6th Cir. 2018).  To plausibly state a failure to intervene claim, the plaintiff must show the defendant "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring."  *Sheffey v. City of Covington*, 564 Fed.Appx. 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  The same standard applies regardless of whether the defendant is a fellow officer or a supervisor.  *Smith v. Heath*, 691 F.2d 220, 224-25 (6th Cir. 1982).

Here, as discussed *supra*, Defendants Gettel and Fondren had both reason to know constitutional harm would be taking place and had the opportunity and means to prevent the harm from occurring.  The failed February 15, 2019 inspection of the

25

subject DataMaster DMT occurred before Miller was arrested, and widespread problems with the machines were discovered before he pleaded guilty and was sentenced. Defendants Gettel and Fondren, as leaders of the Breath Alcohol Program, could have informed the Tecumseh Police Department and/or the Lenawee County Prosecutor prior to January 2020 that the subject machine had failed its inspection, and thus was inaccurate and unreliable. They did not, and Miller was prosecuted based on false evidence. Accordingly, the Court concludes Plaintiff has plausibly pleaded a failure to intervene claim under the Fourteenth Amendment.

Finally, the Court finds Plaintiff has not sufficiently alleged a failure to train or supervise claim. "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999)). "Rather, the supervisors must have actively engaged in unconstitutional behavior." *Id.* (citing *Bass*, 167 F.3d at 1048). Liability must be based on "more than a mere right to control employees." *Id.* (citing *Bass*, 167 F.3d at 1048).

Plaintiff relies on *Hill* v. Marshall, 962 F.2d 1209 (6th Cir. 1992) to argue supervisor liability can be based on the failure to act when the supervisor abandons specific duties of his position and his failure to do his job results in the plaintiff's

26

constitutional violations.   ECF No. 35, PageID.392-93 (citing *Hill*, 962 F.2d at 1213).   However, *Gregory*, a much more recent case, rejects that position.   Like Miller does here, that plaintiff argued *Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003) and *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76 (6th Cir. 1995) demonstrated "supervisors who knowingly abdicate specific responsibilities to oversee subordinates can be held liable for their subordinates' unconstitutional acts." *Gregory*, 444 F.3d at 751 (internal quotation marks omitted).   However, the Sixth Circuit found the plaintiff misinterpreted its precedent as in both cases as "it was the *active performance* of the defendants' individual job function which directly resulted in the[] constitutional injury."   *Id.* at 752 (emphasis in original).

Here, Miller bases his claim on the failure to act and asserts Defendants Gettel and Fondren "personally had a job to do, and neither did it."   Accordingly, the Court concludes Plaintiff cannot make out a failure to train or supervise claim under the Fourteenth Amendment.

### iii.   The Court Will Dismiss Miller's Fourth Amendment Claim Against the MSP Defendants.

Miller did not respond to Defendants' arguments that he did not sufficiently plead a Fourth Amendment violation.   *See generally* ECF NO. 35.   The Sixth Circuit "deems issues not raised in response to dispositive motions forfeited."   *Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019) (citing *Am. Copper & Brass, Inc. v.*

27

*Lake City Indus. Prods., Inc.*, 757 F.3d 540, 545 (6th Cir. 2014)).  Thus, the Court finds Plaintiff has conceded this argument.  *See Agee v. Alphatec Spine, Inc.*, 711 F. App'x 791, 792 (6th Cir. 2018) (holding plaintiff waived argument by failing to raise it in response to defendant's motion to dismiss).

Regardless, it is not clear that Miller can continue to bring a Fourth Amendment fabrication of evidence claim given that he is no longer being "seized" by the state.  *See Manuel v. City of Joliet, Ill.,* 137 S. Ct. 911, 920 n.8 (2017) (holding pretrial detention based on fabricated evidence violates the Fourth Amendment, but "once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment.").  *Cf Hoskins v. Knox Cty., Kentucky*, No. CV 17-84-DLB-HAI, 2018 WL 1352163, at *5 (E.D. Ky. Mar. 15, 2018) ("[A] plaintiff could pursue a fabrication-of-evidence claim under both the Fourth and Fourteenth Amendments, if the plaintiff alleged both that his detention was unlawfully *continued* . . . and that his right to a fair trial was abridged[.]") (emphasis added).

Accordingly, the Court will dismiss Miller's Fourth Amendment claims against the MSP Defendants.

28

2. **The MSP Defendants are Not Entitled to Governmental Immunity and Miller Has Plausibly Pleaded They Were Grossly Negligent.**

Additionally, the MSP Defendants contend they are entitled to governmental immunity on the state law claims.  Under Michigan law, defendants who are governmental employees are, with certain exceptions, statutorily entitled to immunity from tort claims.  MICH. COMP. LAWS § 691.1401 *et seq*; *see also Tarlea v. Crabtree*, 263 Mich. App. 80, 82 (2004).  For the following reasons the Court holds the MSP Defendants are not entitled to governmental immunity in these circumstances.  Specifically, the Court concludes Miller has sufficiently alleged the MSP Defendants were grossly negligent; however, for the reasons discussed *infra*, the Court concludes Miller has not plausibly pleaded negligent or intentional fraud and misrepresentation as to any Defendant and Court VI must be dismissed.

In Michigan, governmental employees are not responsible in tort for personal injuries unless they are grossly negligent, which the statute defines as "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." *Id.*; *see also* MICH. COMP. LAWS § 691.1407(8)(a).

The gross negligence must be "the proximate cause of the injury or damage." MICH. COMP. LAWS § 691.1407(2)(c).  A proper proximate cause analysis "involves examining the foreseeability of consequences, and whether a defendant should be

29

held legally responsible for such consequences." *Ray v. Swager*, 501 Mich. 52, 63 (2017) (citations and internal quotation marks omitted).  Proximate cause is distinct from cause-in-fact, "which requires showing that but for the defendant's actions, the plaintiff's injury would not have occurred."  *Id.* (citations and internal quotation marks omitted).  "In a negligence action, a plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligently risked."  *Id.* at 64 (citations and internal quotation marks omitted).

Here, the Court finds Miller has pleaded a plausible claim for gross negligence.  As discussed *supra*, Plaintiff alleged the subject DataMaster DMT failed an inspection in February 2019, ECF No. 1, PageID.13, and the MSP Defendants became aware of widespread problems with the machines in April 2019, *id.* at PageID.7.  Plaintiff further asserted the MSP Defendants were aware the DataMaster DMTs were used as the main piece of evidence in OWI prosecutions. *Id.* at PageID.5.  Allowing local authorities to continue to use the faulty machines without warning was at least reckless in that it demonstrates a lack of concern with whether local authorities would conduct prosecutions based on false evidence.  That this happened to at least Miller and eleven other individuals in Lenawee County was

30

reasonably foreseeable.  Accordingly, the Court holds Miller has sufficiently alleged gross negligence against the MSP Defendants.

> 3. **Plaintiff Has Not Plausibly Pleaded Either Negligent or Intentional Fraud and Misrepresentation Against Any Defendants.**

Count VI alleges "Defendants negligently, constructively, recklessly, and/or intentionally made" representations they "knew or should have known" to be false. ECF No. 1, PageID.19.  The parties construed these as separate claims for negligent and intentional fraud in their briefing, ECF No. 33, PageID.360-63; ECF No. 35, PageID. 401-02 so the Court will as well.

To maintain a claim for intentional (common law) fraud and misrepresentation under Michigan Law, a plaintiff must plead

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it[,] he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Titan Ins. Co. v. Hyten*, 491 Mich. 547, 556 (2012).  Similarly, to show negligent (innocent) misrepresentation, the plaintiff must show he "justifiably relied to his detriment on information prepared without reasonable care by one who owed the

31

relying party a duty of care." *Alfieri v. Bertorelli*, 295 Mich. App. 189, 194 (2012).

Michigan courts also recognize claims for third-party fraud.

> While some connection, direct or indirect, between a party charged with making false representations and a party relying thereon must be shown, it is not essential, in support of a cause of action for damages resulting from false representations, that the false representations be shown to have been *made directly to the party claiming to have relied upon them*. It has been repeatedly held that where a party makes false representations to another with the *intent or knowledge* that they be *exhibited or repeated* to a third party for the purpose of deceiving him, the third party, if so deceived to his injury, can maintain an action in tort against the party making the false statements for the damages resulting from the fraud.

*Oppenhuizen v. Wennersten*, 2 Mich. App. 288, 295 (1966) (emphasis in original) (citation and internal quotation marks omitted).

Miller briefly argues he has alleged an actual false representation—presumably by Defendant Intoximeters—because he pleaded "Defendants engaged in 'deceptive' falsification of 'certification records' and that such records were used to wrongfully convict citizens, such as Plaintiff, of alcohol related offenses.  ECF No. 36, PageID.513 (quoting ECF No. 1, PageID.18).

First and foremost, the Court notes Plaintiff's citation is to the legal conclusions alleged in Count V as opposed to the factual allegations he makes earlier in the Complaint.  As stated *supra*, the presumption of truth that the Court grants the

32

Plaintiff while assessing a motion to dismiss does not apply to his legal conclusions. *See Iqbal,* 556 U.S. at 678; *see also Cleveland Fire Fighters*, 502 F.3d at 548 (the plaintiff's pleading must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Nevertheless, even if the Court were to take Miller's conclusions as true, they refer to conduct by the Doe technicians. While Plaintiff has alleged the Doe Defendants are Intoximeter employees, ECF No. 1, PageID.4, he has not raised *respondeat superior* or any other theories by which to hold Intoximeters liable for the Doe technician's actions. The Complaint does not include allegations of false representations made, or information prepared, by Intoximeters as opposed to the Doe technicians. Thus, the fraud and misrepresentation claim cannot proceed against Defendant Intoximeters on this basis.

"The false material representation needed to establish fraud may [also] be satisfied by the failure to divulge a fact or facts the defendant has a duty to disclose." *Jaffa v. Shacket*, 114 Mich. App. 626, 640 (1982). However, while "[t]he duty to disclose applies generally to fiduciaries and certain relationships, [] there is no duty to disclose in the ordinary contract setting except when a party is responding to a specific inquiry." *Pioneer State Mut. Ins. Co. v. Shadowens*, No. 343716, 2019 WL 6048586, at *2 (Mich. Ct. App. Nov. 14, 2019). Additionally, "to prove a claim of

33

silent fraud, a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive." *Roberts v. Saffell*, 280 Mich. App. 397, 404 (2008), *aff'd*, 483 Mich. 1089 (2009).  Moreover, in Michigan, as elsewhere, all claims of fraud "must be stated with particularity."  Mich. Ct. R. 2.112.

Here, Plaintiff primarily bases his fraud and misrepresentation claim on his assertion that the Defendants had a duty to disclose the failed inspection on February 15, 2019.  ECF No. 35, PageID.398, ECF No. 36, PageID.513.  However, Miller does not allege that he, the Tecumseh Police, or the Lenawee Prosecutor ever made a specific request regarding subject DataMaster DMT or the efficacy and accuracy of DataMaster DMTs in general.  Nor does he argue the MSP Defendants or Intoximeters were in a fiduciary relationship with him, the Tecumseh Police, or the Lenawee Prosecutor.  Thus, Plaintiff cannot establish that any of the Defendants had a duty to disclose the failed inspection, and he cannot satisfy the first element of a claim for fraud and misrepresentation under Michigan Law.[2]  For these reasons, Count VI must be dismissed as to all Defendants.

———————————————

[2] The MSP Defendants also assert they are entitled to governmental immunity to the extent Miller's state law claims are construed as intentional torts.  ECF No. 31,

4. **Miller Has Not Sufficiently Alleged Intoximeter Is a State Actor.**

As discussed *supra*, Intoximeters argues it cannot be subject to 42 U.S.C. § 1983 liability because it is not a state actor.  For the following reasons, the Court agrees and will dismiss Counts I-IV as to Intoximeters.

For liability to attach under § 1983, "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  There are times when private parties may be considered state actors, though the Supreme Court cases deciding such "have not been a model of consistency."  *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 632 (1991) (O'Connor, J., dissenting).  Courts in this District have recognized "the exceptions tend to fall into two broad categories: the 'public function exception,' and the 'entanglement exception.'"*Cordts v. Griffis*, No. 18-13017, 2020 WL 1274966, at *16 (E.D. Mich. Mar. 16, 2020) (citing Chemerinsky, *Constitutional Law* at 552 (3d ed. 2009)), *motion to certify appeal denied sub nom.*

---

PageID.208-11.  Because the Court has already found Plaintiff cannot maintain a fraud or misrepresentation claim under Michigan Law (and one cannot be intentionally grossly negligent), the Court need not address this issue.

35

*Cordts v. Huron Charter Twp.*, No. 18-13017, 2021 WL 1339510 (E.D. Mich. Apr. 8, 2021).

Under the public function test, to establish action under color of law, "the private actor must perform a public function which has traditionally and exclusively been reserved to the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). "The Sixth Circuit has interpreted the public function category narrowly, noting only functions like holding elections, exercising eminent domain, and operating a company-owned town meet this test." *Cordts*, 2020 WL 1274966 at *16 (citing *Chapman v. Higbee Co.*, 319 F.3d 825, 833–34 (6th Cir. 2003) (*en banc*)).

In this case, Plaintiff has not alleged Intoximeters was performing a public function. Intoximeters sold breath alcohol testing equipment to the MSP, and pursuant to its contract, Intoximeter serviced the equipment, trained MSP staff in using the equipment, and agreed to offer expert testimony regarding the service and maintenance of the equipment if needed. ECF No. 1, PageID.6. None of these are functions traditionally and exclusively reserved to the state. *Jackson*, 419 U.S. at 352. Thus, the Court finds Plaintiff has not established Defendant Intoximeters was a state actor under the public function test.

Under the entanglement exception, a private entity may be considered a state actor "if the [S]tate has affirmatively authorized, encouraged, or facilitated the

36

private unconstitutional conduct, or otherwise permitted a private actor to 'exercise power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Cordts*, 2020 WL 1274966 at \*16 (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)) (cleaned up). The Supreme Court has held that a private entity acts under color of law "when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original). This can happen when a State exercises "coercive power" or "provides significant encouragement, either overt or covert;" "when a private actor operates as a willful participant in joint activity with the State or its agents," "is controlled by an agency of the State," "has been delegated a public function by the state," or "is entwined with governmental policies;" or "when government is entwined in [a private actor's] management or control." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) (collecting cases).

A private corporation whose business depends primarily on public contracts with the State does not become a state actor simply because of its "significant or even total engagement in performing public contracts." *Rendell–Baker v. Kohn*, 457 U.S. 830, 840-41 (1982). Moreover, "[o]ther courts have been reluctant to find state action where the only purported nexus between the [S]tate and a private actor is

37

predicated on a mere contractual relationship." *Cordts*, 2020 WL 1274966 at \*17 (collecting cases).

The Court finds Plaintiff has fallen short of establishing Intoximeters was a state actor under the entanglement test as well.  Miller has alleged that Intoximeters sold breathalyzer equipment to the MSP and contracted to maintain said equipment, provide training on said equipment, and testify regarding said equipment if necessary.  ECF No. 1, PageID.6.  While Plaintiff alleges Intoximeters employees did not perform their duties under the contract, he does not allege that anyone at MSP coerced or encouraged this behavior.  *See Blum,* 457 U.S. at 1004 (a private actor operates under color of law when the State "has exercised coercive power or has provided such significant encouragement, either overt or covert," that the actions must legally be considered those of the State).  Indeed, Miller alleges the opposite: the MSP eventually sent Intoximeters a letter stating unequivocally that its actions constituted breach of contract that could lead to termination.  ECF No. 1, PageID.7-8.  Finding that Intoximeters is a state actor in these circumstances "would make every [MSP] supplier a state actor under the Governmental Nexus Test.  *Neal-Lomax v. Las Vegas Metro. Police Dep't*, No. 2:05CV1464 PMPPAL, 2006 WL 2022989, at \*5 (D. Nev. July 18, 2006) (finding taser supplier that also provided training to police department was not a state actor under the nexus test).

38

Plaintiff's reliance on *Cahoo v. SAS Inst. Inc.*, 322 F. Supp. 3d 772 (E.D. Mich. 2018), *aff'd in part, rev'd in part and remanded sub nom. Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019) is misplaced.  The technology at issue in that case, a "robo-adjudication" system wholly replaced the Michigan Unemployment Agency ("UIA").  *Id.* at 787 ("In the years material to this suit, the UIA largely did not employ any human review in making these automated determinations.").  Thus, the level of "managerial authority" delegated to the *Cahoo* defendants by the State was particularly concerning.  Here, Plaintiff has alleged Defendant Intoximeters was in charge of maintaining and servicing the breathalyzer equipment, not making adjudications based on the results.  Unlike in *Cahoo*, the MSP had not delegated any state functions to Intoximeters; nor was it entwined with governmental policies.  *See Brentwood Acad.*, 531 U.S. at 296.  Accordingly, the Court holds Plaintiff has not plausibly pleaded Intoximeters was acting under color of law and Counts I-IV are dismissed as to this Defendant.

5. **Plaintiff Has Not Adequately Alleged Intoximeter Owed Him a Duty of Care**

Defendant Intoximeters seeks to dismiss Count V (the negligence claim) because it asserts it had no relationship with Miller and thus did not owe him a duty of care.  ECF No. 33, PageID.357-60.  Plaintiff counters that his claim is based on

common law negligence, not a specific relationship between him and Intoximeters. ECF No. 36, PageID.508-11.

"Generally, whether a defendant owes a plaintiff a duty of care is a question of law determined by the court." *Sabbagh v. Hamilton Psychological Services, PLC*, 329 Mich. App. 324, 348 (2019) (citing *Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 659 (2012)).   The Michigan Supreme Court recognizes a common-law duty, "which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others."  *Clark v. Dalman*, 379 Mich. 251, 261 (1967).

However, the court has instructed that:

> the lower courts should analyze tort actions based on a contract and brought by a plaintiff who is not a party to that contract by using a "separate and distinct" mode of analysis. Specifically, the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie.
> . . .
> [I]f defendant fails or refuses to perform a promise, the action is in contract. If defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by the contract, the action may be either in contract or in tort. In such cases, however, no tort liability arises for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made.

40

*Fultz v Union-Commerce Assoc*, 470 Mich. 460, 469-70 (2004).  Later, in *Loweke v. Ann Arbor Ceiling & Partition Co.*, 489 Mich. 157 (2011), the court clarified "*Fultz*'s directive is to determine whether a defendant owes a noncontracting, third-party plaintiff a legal duty apart from the defendant's contractual obligations to another."  489 Mich. at 169.  Thus, a court must determine, "whether, aside from the contract, a defendant is under any legal obligation to act for the benefit of the plaintiff[.]"  *Id.* at 168 (citation and internal quotation marks omitted).

In *Bay Cty. Rd. Comm'n v. John E. Green Co.*, No. 347439, 2021 WL 4238273(Mich. Ct. App. Sept. 16, 2021), the Michigan Court of Appeals analyzed *Fultz* and *Loweke* and then rejected the plaintiff's argument that the defendant owed him a common law duty.  Specifically, the court found:

> Plaintiff argues that defendant had a common law duty to "protect[ ] the safety, health, and welfare of the public," however, the contract itself articulates the duty owed by the defendant to both Spence and the owner, plaintiff.  The subcontract also provided that defendant would perform its work "in a prudent and safe manner; maintain a safe and secure workplace; insure the safety of all persons and property of yourself and others; comply with all safety requirements of the Owner."  Plaintiff does not otherwise plead facts to support a duty of care for mechanical contractors to act so as to protect the safety, health, and welfare of the public.

41

> Viewing the factual allegations in the first amended complaint in a light
> most favorable to plaintiff, plaintiff failed to show the existence of a
> duty owed to it under the Occupational Code or common law, and the
> trial court erred in denying dismissal of plaintiff's negligence claim.

*Id.* at *4.

The Court finds Miller has not established a legal duty of care apart from that which arises from the Service Contract. Plaintiff argues that Intoximeters failed to use due care in its performance of the contract and that Intoximeters failed to use due care by submitting incomplete documentation on the alleged work performed on the DataMasters and by failing to identify or address problems with the machines. ECF No. 36, PageID.509. However, per the Complaint, those duties arise from the Service Contract. Because Plaintiff has not alleged facts giving rise to any additional duties separate from those created by the contract, his negligence claim against Intoximeters must fail.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that the Court will **GRANT IN PART AND DENY IN PART** Defendants Fondren and Gettel's Motion to Dismiss in Lieu of an Answer (ECF No. 31). Specifically, the Court **GRANTS** the Motion as to the Fourth Amendment claim in Count I (fabrication of evidence), the entirety of Count IV (failure to train and supervise),

42

and the entirety of Count VI (fraud and misrepresentation).  The Court **DENIES** the

Motion as to the remaining Counts.

   **IT IS FURTHER ORDERED** that the Court **GRANTS** Defendant

Intoximeter's Motion to Dismiss (ECF No. 33).

   **IT IS SO ORDERED**.


         s/Gershwin A. Drain
         GERSHWIN A. DRAIN
         UNITED STATES DISTRICT JUDGE

Dated:  December 16, 2021


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 16, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

43